# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

THERESA TYLER,

        Plaintiff,

        v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

C.A. No. 10-599-LPS

---

Gary Linarducci, Esquire, of LINARDUCCI & BUTLER, PA, Wilmington, DE.

    Attorney for Plaintiff.

Charles M. Oberly, III, Esquire, United States Attorney and Heather Benderson, Esquire
OFFICE OF THE UNITED STATES ATTORNEY, Wilmington, DE.

Eric P. Kressman, Esquire, SOCIAL SECURITY ADMINISTRATION - REGION III OFFICE
OF GENERAL COUNSEL, Philadelphia, PA.

    Attorneys for Defendant.

---

## MEMORANDUM OPINION

September 28, 2012
Wilmington, Delaware

*Le P. A*

**STARK, U.S. District Judge:**

## I.  INTRODUCTION

Plaintiff, Theresa Tyler ("Tyler" or "Plaintiff"), appeals from a decision of defendant,

Michael J. Astrue, the Commissioner of Social Security ("Commissioner" or "Defendant"),

denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security

Act, 42 U.S.C. §§ 401-433. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

Presently pending before the Court are cross-motions for summary judgment filed by

Plaintiff and Defendant. (D.I. 24, 28) Plaintiff seeks reversal of Defendant's decision and an

award of DIB or, in the alternative, remand for further analysis. (D.I. 25 at 18) Defendant

requests the Court affirm his decision. (D.I. 29 at 21) For the reasons set forth below, the Court

will deny Plaintiff's motion for summary judgment and grant Defendant's motion for summary

judgment.

## II.  BACKGROUND

### A.  Procedural History

Plaintiff filed her claim for DIB on August 7, 2007, alleging disability since December

31, 2003, due to high blood pressure, neck fusion, arthritis, and back pain. (D.I. 12 (hereinafter

"Tr.") at 10, 112) Plaintiff's claim for DIB was denied initially and upon reconsideration. (*Id.* at

45-49, 54-58) Thereafter, Plaintiff requested a hearing before an administrative law judge

("ALJ"). (*Id.* at 60-63) A hearing was held on April 7, 2009 before an ALJ, at which Plaintiff

was represented by counsel. (*Id.* at 10) Plaintiff and a vocational expert testified at the hearing.

(*See id.* at 20-41) On August 3, 2009, the ALJ issued a written decision in which he found that

Plaintiff was not disabled as defined in the Social Security Act. (*Id.* at 16) Plaintiff requested

1

review of the ALJ's decision on August 5, 2009. (*Id.* at 6) The Appeals Council denied

Plaintiff's request for review on June 10, 2010. (*Id.* at 5) Thus, the August 3, 2009 decision of

the ALJ became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.955, 404.981;

*Sims v. Apfel*, 530 U.S. 103, 107 (2000).

On July 14, 2010, Plaintiff filed a complaint seeking judicial review of the ALJ's August

3, 2009 decision. (D.I. 2) Subsequently, on September 23, 2011, Plaintiff moved for summary

judgment. (D.I. 24) In response, on November 22, 2011, the Commissioner filed a cross-motion

for summary judgment. (D.I. 28)

### B.      Factual Background

#### 1.      Plaintiff's Medical History, Treatment, and Condition

Plaintiff was forty-seven years old on her alleged disability onset date and was considered

a younger individual for disability determination purposes. *See* 20 C.F.R. § 404.963(c); Tr. at

112. She was forty-nine years old when the ALJ rendered a decision in this case. (Tr. at 16)

Less than twenty days after the ALJ's decision, Plaintiff turned fifty years old. (*Id.* at 20)

Plaintiff has a limited education; she left school in tenth grade and never obtained a GED. *See*

20 C.F.R. § 404.1564(b)(3); Tr. at 20. Plaintiff has previous work experience as a packer,

assembler, and cashier. (Tr. at 34) In her application for DIB, Plaintiff relied on cervical and

lumbar injuries as the cause of her disability. Plaintiff's relevant medical history is detailed

below.

##### a.      Cervical and Lumbar Injuries

Plaintiff has a significant history of cervical spine injury. (*Id.* at 12) Plaintiff underwent

a cervical fusion in 2002. (*Id.* at 12, 281) On May 12, 2007, Plaintiff was injured in a motor

2

vehicle accident, which aggravated her past cervical spine injuries. (*Id.* at 12-13, 282-83, 291, 307-08) As a result of the accident, Plaintiff was diagnosed with a strained neck and sprained ankle. (*Id.* at 212)

Several days after the accident, Wayne I. Tucker, D.O., found that Plaintiff had tenderness and spasms along her spine. (*Id.* at 282-83) On May 25, 2007, Plaintiff told Dr. Tucker that she was sore and felt weak on the left side of her body. (*Id.* at 284) Dr. Tucker observed spinal tenderness and spasms on two subsequent examinations. (*Id.* at 285-86)

On July 9, 2007, Plaintiff underwent MRIs of her cervical and lumbar spine. (*Id.* at 13, 281, 289) The MRI of her cervical spine showed status-post cervical fusion at C6-7 and small central disc osteophyte complexes at C3-4 and C4-5, but no signs of disc extrusion or significant central canal or foraminal stenosis. (*Id.* at 13, 281) An MRI of Plaintiff's lumbar spine revealed degenerative changes superimposed onto congenital narrowing at L4-5, which contributed to moderate central canal stenosis and mild bilateral foraminal stenosis. (*Id.* at 13, 289) A normal variant of left-sided hemisacrolization at L5 and ligamentum flavum thickening on the left side at T10-11 also appeared, but there was no disc extrusion at any level. (*Id.*)

Ten days later, on July 19, 2007, Dr. Tucker again observed tenderness in Plaintiff's cervical and lumbosacral spine. (*Id.* at 287) Subsequently, on August 9, 2007, Plaintiff presented to Conrad K. King, Jr., M.D., with neck, lower back, and right ankle pain exacerbated by activity and partially relieved by medicine. (*Id.* at 308) Dr. King determined that Plaintiff had full range of motion in her cervical spine with discomfort at the extremes of rotation, extension, and lateral bending. (*Id.* at 311) Dr. King also determined that Plaintiff had moderate myospasm in her left trapezius and mild myospasm in her right trapezius. (*Id.*) Based on his examination,

3

Dr. King diagnosed Plaintiff with strain/sprain of her cervical and lumbar spine and bruising, with sprain, of her right ankle. (*Id.*) Dr. King opined that Plaintiff was "currently totally disabled." (*Id.* at 310-11) Upon reexamination several days later and in two subsequent evaluations, Dr. King found tenderness and tightness in Plaintiff's spine. (*Id.* at 302)

On August 27, 2007, Bruce J. Rudin, M.D., the orthopedist who had fused Plaintiff's cervical spine in January 2004, examined Plaintiff. (*Id.* at 13, 194-95, 291) Dr. Rudin noted Plaintiff had likely sustained a fairly significant soft tissue injury and fairly severe lumbar stenosis with severe facet disease at L4-5. (*Id.* at 13, 291) Dr. Rudin observed that Plaintiff was neurologically normal, but that she had restricted range of motion in her neck and back with surrounding bone tenderness. (*Id.*) He recommended Plaintiff undergo lumbar epidural steroid injections. (*Id.* at 13)

On September 11, 2007, Dr. King found Plaintiff's physical status essentially unchanged. (*Id.* at 305) He continued to diagnose Plaintiff with cervical and lumbar sprain/strain, but this time noted that her right ankle bruise/sprain was resolving. (*Id.*) Dr. King opined that Plaintiff remained disabled. (*Id.* at 305-06)

Subsequently, on October 11, 2007, V.K. Kataria, M.D., a state agency physician, reviewed the record evidence and concluded that Plaintiff retained the residual functional capacity ("RFC") to occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, stand/walk at least two hours in an eight-hour workday, sit about six hours in an eight-hour workday, and had an unlimited ability to push or pull. (*Id.* at 296) Dr. Kataria further limited Plaintiff to no balancing and to only occasional climbing, stooping, kneeling, crouching, and crawling. (*Id.* at 298) He also stated that Plaintiff should avoid concentrated exposure to

vibration and hazards. (*Id.* at 299) Ultimately, Dr. Kataria opined Plaintiff had a sedentary RFC. (*Id.* at 297)

On October 16, 2007, Plaintiff complained to Dr. King of continued neck and low back pain exacerbated by daily activities. (*Id.* at 304) Dr. King observed tightness in Plaintiff's trapezius and lumbar paraspinal muscles with palpable trigger points. (*Id.*) He opined that Plaintiff remained disabled. (*Id.*)

In November 2007, Plaintiff reported to Dr. King that while the cooler weather increased her neck and lower back discomfort, she did "derive relief with use of pain medication." (*Id.* at 326) On examination, Dr. King observed moderate-to-marked myospasm of Plaintiff's trapezius and lumbar paraspinal muscles. (*Id.* at 326) Again, Dr. King opined that Plaintiff remained disabled. (*Id.* at 326-27)

Plaintiff visited with Dr. King or his associate, Damon Cary, D.O., ten times between December 11, 2007 and January 27, 2009. (*Id.* at 312-17, 322-25, 338-43) On December 11, 2007, Dr. King observed that Plaintiff had moderate residual myospasm of the trapezius and lumbar paraspinal muscles with palpable trigger points. (*Id.* at 324) On January 9, 2008, Dr. Cary found ongoing muscle spasms over the trapezial and lumbar paraspinal muscles along with trigger points in the lumbar region. (*Id.* at 322) On July 31, 2008, Dr. King again found trigger points in Plaintiff's trapezial and lumbar paraspinal muscles. (*Id.* at 339) On September 26, 2008, Dr. King found tightness in these muscles. (*Id.* at 341) On January 27, 2009, Dr. King observed that Plaintiff had moderate-to-marked myospasm in her trapezial and lumbar paraspinal muscles with a limited range of motion of her cervical and lumbar spine. (*Id.* at 343)

5

## 2.    The Administrative Hearing

Plaintiff's administrative hearing took place on April 7, 2009.  (*Id.* at 10, 17)  Plaintiff testified at the hearing and was represented by counsel.  (*Id.* at 10)  A vocational expert also testified.  (*Id.* at 34-40)

### a.    Plaintiff's Testimony

At the hearing, Plaintiff testified that she is forty-nine years old and lives with her husband.  (*Id.* at 20)  Plaintiff stated that she is active in her church and serves as an assistant to her pastor.  (*Id.* at 29)  She stated that she dropped out of high school in tenth grade and never received a GED.  (*Id.*)  Plaintiff testified that she previously was employed doing automotive assembly work at General Motors.  (*Id.* at 21)  She further testified that she was injured at work after getting hit with a forklift in both 2002 and 2004.  (*Id.*)  Plaintiff stated that she has not returned to work since her car accident in 2007.  (*Id.* at 21-22)  She stated that she had undergone surgery on her neck and fingers.  (*Id.* at 22)

Plaintiff also testified that she presently experiences neck and back pain as well as pain in her fingers.  (*Id.* at 23)  She stated that the pain varies day to day, but impacts her ability to grip objects and do housework and laundry.  (*Id.* at 23, 25, 27-28)  She indicated that Dr. Roden has been treating her pain, on and off, for the past seven years.  (*Id.* at 24-25)  Plaintiff stated that she takes Percocet and medicine to treat high blood pressure.  (*Id.* at 25)  She testified that she drives, but does not drive far from her home.  (*Id.* at 25)  She also testified that she can carry eight to ten pounds, can stand for fifteen minutes before she needs to sit down and rest, and can sit for half an hour before she needs to get up.  (*Id.* at 27, 30)  She further testified that she can lift her head and use both of her arms without any problems.  (*Id.* at 33)

6

#### b. Vocational Expert's Testimony

A vocational expert, Ellen C. Jenkins, also testified at the hearing. (*See id.* at 34-40) Ms.

Jenkins classified Plaintiff's past relevant work experience as follows: (1) Plaintiff's job as a

packer as a medium exertion level, unskilled job; (2) Plaintiff's job as an assembler as a light

exertion level, semi-skilled job; and (3) Plaintiff's job as a cashier as a light exertion level,

unskilled job. (*Id.* at 34)

The ALJ asked the vocational expert the following question:

> Let's say we have a person who is 47 years of age on her onset
> date, has a 10th grade education . . . right-handed by nature,
> suffering from degenerative disc disease, lumbar, cervical, mostly
> cervical. She had a cervical fusion . . . in '02 as a work injury and
> she's had several automobile accidents since, some injury to the
> left upper extremity. All of these things cause her to have
> moderate pain and discomfort somewhat relieved by her
> medication without significant side effects, but she indicates in her
> testimony today she derives some sleepiness from one or a
> combination. And if I find because of her pain she needs to have
> simple, routine, unskilled jobs, SVP 2, she's able to attend tasks
> and complete schedules, low-stress concentration and memory, she
> can lift 10 pounds regularly and 20 on occasion, sit for an hour,
> stand for five or 10 minutes if needed, consistently on an alternate
> basis during an eight hour day, five days a week, would have to
> avoid heights and hazardous machinery and nothing along
> climbing, balancing, stooping, no overhead reaching with the left
> upper extremity and would be mildly limited as to push and pull in
> the right lower extremity, and no repetitive neck turning jobs, and
> would seem to be able to do light work activities, can you can give
> me jobs that such a person could do out there in the national
> economy in significant numbers in your opinion as a Vocational
> Expert?

(*Id.* at 35-36) In response, the vocational expert testified that, despite those limitations, such an

individual could perform the light, unskilled jobs of copier operator and information clerk. (*Id.*

at 36) The vocational expert also testified that Plaintiff could perform her past job as a cashier so

7

long as there was a stool that permitted a sit/stand option. (*Id.*)

### 3. The ALJ's Findings

On August 3, 2009, the ALJ issued the following findings:[1]

1.   The claimant last met the insured status requirements of the Social Security Act on June 30, 2009.

2.   The claimant did not engage in substantial gainful activity during the period from her alleged onset date of May 11, 2007 through her date last insured of June 30, 2009 (20 C.F.R. 404.1471 *et. seq.*).

3.   Through the date last insured, the claimant had the following severe impairment: degenerative disc disease of the cervical spine and lumbar spine (20 C.F.R. 404.1520(c)).

4.   Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1525 and 404.1526).

5.   After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except the claimant must be able to sit for one hour then stand for fifteen minutes throughout an eight-hour workday. She must avoid heights, moving machinery and she cannot engage in prolonged climbing and stooping. The claimant cannot perform repetitive neck turning.

6.   Throughout the date last insured, the claimant was capable of performing past relevant work as a cashier. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. 404.1565).

7.   The claimant was not under a disability, as defined in the Social Security Act, at any time from May 11, 2007, the alleged onset date, through June 30, 2009, the date last insured (20 C.F.R. 404.1520(f)).

---

[1]The ALJ's factual findings have been extracted from his decision, which interspersed factual findings and commentary. (Tr. at 12-16)

## III. LEGAL STANDARDS

### A. Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 415 U.S. 574, 586 n.10 (1986). A party asserting that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 415 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions,

conclusory allegations or suspicions to show the existence of a genuine issue") (internal

quotation marks omitted). However, the "mere existence of some alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for summary

judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 411 U.S. 242,

247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary

judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v.

Catrett*, 411 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a

party who fails to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial").

**B.     Review of the ALJ's Findings**

The Court must uphold the Commissioner's factual decisions if they are supported by

"substantial evidence." *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Monsour Med. Ctr. v. Heckler*, 806

F.2d 1185, 1190 (3d Cir. 1986). "Substantial evidence" means less than a preponderance of the

evidence but more than a mere scintilla of evidence. *See Rutherford v. Barnhart*, 399 F.3d 546,

552 (3d Cir. 2005). As the United States Supreme Court has noted, substantial evidence "does

not mean a large or significant amount of evidence, but rather such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*,

487 U.S. 552, 565 (1988).

In determining whether substantial evidence supports the Commissioner's findings, the

Court may not undertake a de novo review of the Commissioner's decision and may not re-weigh

the evidence of record. *See Monsour*, 806 F.2d at 1190. The Court's review is limited to the

10

evidence that was actually presented to the ALJ. *See Matthews v. Apfel*, 239 F.3d 589, 593-95

(3d Cir. 2001). However, evidence that was not submitted to the ALJ can be considered by the

Appeals Council or the District Court as a basis for remanding the matter to the Commissioner

for further proceedings, pursuant to the sixth sentence of 42 U.S.C. § 405(g). *See Matthews*,

239 F.3d at 592. "Credibility determinations are the province of the ALJ and only should be

disturbed on review if not supported by substantial evidence." *Gonzalez v. Astrue*, 537

F. Supp. 2d 644, 657 (D. Del. 2008) (internal quotation marks omitted).

The Third Circuit has explained that:

> A single piece of evidence will not satisfy the substantiality test if
> the [Commissioner] ignores, or fails to resolve, a conflict created
> by countervailing evidence. Nor is evidence substantial if it is
> overwhelmed by other evidence – particularly certain types of
> evidence (e.g., that offered by treating physicians) – or if it really
> constitutes not evidence but mere conclusion.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).

Thus, the inquiry is not whether the Court would have made the same determination but,

rather, whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d

1211, 1213 (3d Cir. 1988). Even if the reviewing Court would have decided the case differently,

it must give deference to the ALJ and affirm the Commissioner's decision if it is supported by

substantial evidence. *See Monsour*, 806 F.2d at 1190-91.

## IV.     DISCUSSION

### A.     Disability Determination Process

Title II of the Social Security Act, 42 U.S.C. § 423(a)(1)(D), "provides for the payment of

insurance benefits to persons who have contributed to the program and who suffer from a

physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Title XVI of the

Social Security Act provides for the payment of disability benefits to indigent persons under the

SSI program. 42 U.S.C. § 1382(a). A "disability" is defined for purposes of both DIB and SSI

as the inability to do any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C.

§§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled "only if his physical or mental

impairment or impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A),

1382c(a)(3)(B); *see also Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003).

In determining whether a person is disabled, the Commissioner is required to perform a

five-step sequential analysis. *See* 20 C.F.R. §§ 404.1520, 416.920; *Plummer v. Apfel*, 186 F.3d

422, 427-28 (3d Cir. 1999). If a finding of disability or non-disability can be made at any point

in the sequential process, the Commissioner will not review the claim further. 20 C.F.R.

§§ 404.1520(a)(4), 416.920(a)(4).

At step one, the Commissioner must determine whether the claimant is engaged in any

substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i) (mandating

finding of non-disability when claimant is engaged in substantial gainful activity). If the

claimant is not engaged in substantial gainful activity, step two requires the Commissioner to

determine whether the claimant is suffering from a severe impairment or a combination of

impairments that is severe. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii) (mandating finding of

12

non-disability when claimant's impairments are not severe), 416.920(a)(4)(ii). If the claimant's

impairments are severe, the Commissioner, at step three, compares the claimant's impairments to

a list of impairments that are presumed severe enough to preclude any gainful work. *See* 20

C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Plummer*, 186 F.3d at 428. When a claimant's

impairment or its equivalent matches an impairment in the listing, the claimant is presumed

disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant's impairment,

either singly or in combination, fails to meet or medically equal any listing, the analysis

continues to steps four and five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four, the Commissioner determines whether the claimant retains the residual

functional capacity ("RFC") to perform his past relevant work. *See* 20 C.F.R.

§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) (stating claimant is not disabled if able to return to past

relevant work); *Plummer*, 186 F.3d at 428. A claimant's RFC is "that which an individual is still

able to do despite the limitations caused by his or her impairment(s)." *Fargnoli v. Halter*, 247

F.3d 34, 40 (3d Cir. 2001). "The claimant bears the burden of demonstrating an inability to

return to her past relevant work." *Plummer*, 186 F.3d at 428.

If the claimant is unable to return to her past relevant work, step five requires the

Commissioner to determine whether the claimant's impairments preclude her from adjusting to

any other available work. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (mandating finding of

non-disability when claimant can adjust to other work); *Plummer*, 186 F.3d at 428. At this last

step, the burden is on the Commissioner to show that the claimant is capable of performing other

available work before denying disability benefits. *See Plummer*, 186 F.3d at 428. In other

words, the Commissioner must prove that "there are other jobs existing in significant numbers in

the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Id.* In making this determination, the ALJ must analyze the cumulative effect of all of the claimant's impairments. *See id.* At this step, the ALJ often seeks the assistance of a vocational expert. *See id.*

### B. Tyler's Arguments on Appeal

Tyler presents six arguments on appeal: (1) the ALJ improperly determined that Tyler's past work as a cashier constituted past relevant work experience; (2) the ALJ incorrectly classified Tyler's sedentary RFC as an RFC for light work; (3) the ALJ incorrectly identified Tyler's date last insured ("DLI") and failed to consider the entire period at issue; (4) the ALJ failed to consider the fact that Tyler reached age fifty within twenty days of the ALJ's decision; (5) the ALJ's RFC and hypothetical to the vocational expert failed to include all of Tyler's credibly established limitations; and (6) the ALJ failed to weigh the medical opinion evidence in accordance with applicable laws and regulations.

#### 1. Tyler's past work as a cashier

Plaintiff first argues that the ALJ improperly determined that Plaintiff's past work as a cashier was past relevant work experience, as the Social Security Administration ("SSA") defines the term, because the record does not establish that Plaintiff ever performed her job as a cashier at the substantial gainful activity level. (D.I. 25 at 6) The Commissioner responds that Plaintiff's work experience as a cashier does qualify as past relevant work experience. (D.I. 29 at 9)

The SSA defines past relevant work experience as work that was performed: (1) in the last fifteen years; (2) long enough for the claimant to learn how to do it; and (3) at the substantial

14

gainful activity level. *See* 20 C.F.R. § 404.1565(a). In order to reach the level of substantial

gainful activity, the claimant must have earned more than $500 per month (for the period through

June 1999) and $700 (for the period after June 1999 through December 1999). *See* 20 C.F.R.

§ 404.1574(b), tbl. 1.[2]

Plaintiff's work as a casino cashier in 1999 was within fifteen years of the ALJ's 2009

decision. (Tr. at 16, 98, 113) The vocational expert classified this work as unskilled, which

means work that "a person can usually learn to do . . . in 30 days . . . ." 20 C.F.R. § 404.1568(a);

Tr. at 34. The record contains substantial evidence to support a finding that Plaintiff earned at

least $500 per month for at least one month between January and June 1999 and/or at least $700

per month for at least one month between June and December 1999.[3] Accordingly, there was

substantial evidence to support the ALJ's determination that Plaintiff's past work as a cashier

qualified as past relevant work experience.

In her briefing, Plaintiff contends she worked as a "teller," not a "cashier." (D.I. 30 at 1)

Documents in the record show Plaintiff describing her position (at Delaware Park casino in 1999)

as "Teller" and, in more detail, "nuetral teller. Taking money from people placing bets." (Tr. at

---

[2]The amount a claimant must have earned varies based on the relevant time period. The
relevant time period here is from 1990 to 1999.

[3]Records indicate that Plaintiff earned total wages of $4,656.66 from Delaware Park (not
counting an additional $728.27 she earned in tips). (Tr. at 105) It appears that Plaintiff did not
work at Delaware Park for the entirety of 1999; she reports working 40-hour work weeks as an
assembler reworking parts for cars beginning on some unspecified date in 1999. (Tr. at 138, 140)
Plaintiff disclosed that she earned $11 per hour in the casino, where she worked five days per
week for eight hours per day. (Tr. at 113, 137, 142) On a monthly basis, this would amount to at
least $1760 of wages per month ($11 per hour times 8 hours times 5 days times 4 weeks), well in
excess of the $500 or $700 thresholds. There is nothing in the record to suggest that Plaintiff
earned less than $500 or $700 per month at the casino.

15

113, 137, 142) The vocational expert testified that Plaintiff "worked as a cashier, that was in the casino." (Tr. at 34) Elsewhere the vocational expert described Plaintiff's position at the casino as a "cashier teller position" and "the teller position in the casino, she was a cashier teller in a casino." (Tr. at 36-47) There was substantial evidence to support the ALJ's determination that Plaintiff's past relevant work was properly characterized as a "cashier" position.

### 2. Tyler's RFC

Next, Plaintiff contends that the sit/stand option contained in the ALJ's RFC assessment contravenes the Commissioner's definition of light work. (*See* D.I. 25 at 7-8; 20 C.F.R. § 404.1567(b) (defining light work)) In response, the Commissioner argues that the ALJ properly relied on the assessment of the vocational expert to clarify the implications of Plaintiff's RFC, which was somewhere between the sedentary and light exertional levels of work. (D.I. 29 at 11)

The Court concludes that the ALJ correctly assessed Plaintiff's RFC. The SSA has recognized that "[i]n situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere 'in the middle' in terms of the regulatory criteria for exertional ranges of work . . . VS [vocational specialist] assistance is advisable . . . ." SSR 83-12, 1983 WL 31253, at *3; *see also Santiago v. Barnhart*, 367 F. Supp. 2d 728, 733 (E.D. Pa. 2005) ("There is nothing oxymoronic in finding that a plaintiff can perform a *limited* range of light work."). Thus, the ALJ properly concluded that claimant could perform a limited range of light work in that she was limited by the need to be able to sit for one hour and then stand for fifteen minutes. (Tr. at 13) That Plaintiff could not fully perform light work – which requires the ability to stand and walk for one-third to two-thirds of the work day – does not mean

16

that the ALJ was required to determine that Plaintiff had a sedentary RFC. Instead, there is substantial evidence to support the ALJ's classification of Plaintiff as being limited to light work with the additional sitting/standing restriction, including Plaintiff's own testimony and the finding of the state agency consultant.[4] (*See id.* at 27, 296)

### 3. Tyler's DLI and the period at issue

Plaintiff argues that the ALJ incorrectly identified Plaintiff's DLI for DIB entitlement as June 30, 2009, when Plaintiff's actual DLI was June 30, 2010. (D.I. 25 at 11) The Commissioner responds that even if the ALJ erroneously identified her DLI, remand is not required because such error was harmless. (D.I. 29 at 12)

It appears that the ALJ did incorrectly identify Tyler's DLI. (*Compare* Tr. at 89 (correctly listing Plaintiff's DLI as June 30, 2010) *with id.* at 12 (incorrectly listing Plaintiff's DLI as June 30, 2009)) However, the Court agrees with Defendant that this error is harmless. *See generally Raines v. Astrue*, 2012 WL 699460, at \*4 (N.D. Cal. Mar. 1, 2012) (stating ALJ's incorrect calculation of claimant's DLI is harmless if "error was inconsequential to the ultimate determination that Plaintiff was not disabled"); *Swain v. Comm'r of Soc. Sec. Admin.*, 2011 WL 6780904, at \*2 (N.D. Ohio Dec. 27, 2011) ("[E]ven assuming that the ALJ's determination [of claimant's DLI] was flawed, the error was of no consequence as it did not influence the ALJ's decision, and consequently, does not support the need for remand."); *see also generally Odette v. Comm'r of Soc. Sec.*, 2010 WL 2104300, at \*10 (E.D. Mich. May 3, 2010) (determining that

---

[4]Although the state agency consultant determined that Plaintiff had a sedentary RFC (Tr. at 297), this determination was not controlling on the ALJ, as RFC determinations are administrative findings reserved to the ALJ. *See* 20 C.F.R. § 404.1546([c]). The ALJ relied on and incorporated various findings of the state agency consultant in his RFC.

incorrectly identifying claimant's DLI "is harmless error where the onset date was prior to the [DLI]").

Plaintiff asserts that the ALJ's error deprived her of her right to have her entire period of potential entitlement considered. (D.I. 25 at 11)  However, the ALJ expressly stated that he gave "careful consideration to the entire record." (Tr. at 13)  The entire record included all medical evidence relating to Plaintiff's alleged disability – yet none of the medical evidence in the record post-dated the incorrect DLI. The last date on the medical records is March 2009. (Tr. at 169-343)

Additionally, Plaintiff argues that this error was harmful because the ALJ failed to consider how Plaintiff's August birthday (when she turned fifty years old) impacted her disability status. (D.I. 25 at 11; *see also* 20 C.F.R. § 404.1563(d) (explaining that turning fifty advances claimant to category of "person closely approaching advanced age," where claimant's age may contribute to serious limitation of claimant's ability to adjust to other work))  However, even if the ALJ viewed Plaintiff as closely approaching advanced age, this would not have had any impact on Plaintiff's disability status because the ALJ determined Plaintiff had the RFC to perform light work. *See* 20 C.F.R., pt. 404, subpt. P, app. 2 § 202.10, tbl. 2 (indicating that claimant "closely approaching advanced age" who did not graduate high school, has unskilled past work, and retains RFC for light work, is not disabled).

4.      **Whether the ALJ failed to consider the fact that Tyler reached age fifty within twenty days of the ALJ's decision**

Plaintiff argues that the ALJ erred in failing to consider that Plaintiff would reach age fifty within twenty days of his decision. (D.I. 25 at 11)  Plaintiff contends this error requires

remand because the ALJ had limited Plaintiff to sedentary work, and a fifty year old limited to sedentary work is considered disabled. *Id.* at 12; *see* 20 C.F.R. pt. 404, subpt. P, app. 2 § 202.10, tbl. 1. In response, the Commissioner argues that the ALJ's alleged failure to consider Plaintiff's upcoming fiftieth birthday was harmless error because even a fifty year old claimant with an RFC for light work is considered not disabled. D.I. 29 at 14; *see* 20 C.F.R., pt. 404, subpt. P, app. 2 § 202.10, tbl. 2.

As an initial matter, it is unclear whether the ALJ failed to consider Plaintiff's age in making his determination. In his written opinion, the ALJ mentioned Plaintiff's date of birth and noted that Plaintiff was forty-nine years old, and thus, a younger individual. (Tr. at 15) Therefore, it seems that the ALJ was aware of Plaintiff's age and the fact that within a month of his decision, the Plaintiff would turn fifty years old. *See Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071-72 (9th Cir. 2010) (finding ALJ's discussion of claimant's birth date, current age, and SSA regulations regarding impact of age on disability determination to be sufficient evidence of ALJ's consideration of claimant's age situation); *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399-401 (6th Cir. 2008) (same).

Even assuming that the ALJ failed to consider Plaintiff's upcoming fiftieth birthday, this error was harmless. As previously discussed, the Court has determined that there was substantial evidence to support the ALJ's categorization of Plaintiff's RFC as one for light work. Thus, Plaintiff's argument that turning fifty would impact her disability status is misplaced because turning fifty would only impact her disability status if she had an RFC for sedentary work. *See* 20 C.F.R. pt. 404, supt. P, app. 2 § 201.10, tbl. 2 (indicating claimant "closely approaching advanced age" who did not graduate high school, has unskilled past work, and retains RFC for

19

sedentary work, is disabled). Thus, this is not a borderline age situation. *See* 20 C.F.R.

§ 404.1563(b) (defining borderline age situation as where claimant is "within a few days to a few

months of reaching an older age category, and using the older age category would result in a

determination or decision that [claimant] is disabled").

### 5. Whether the ALJ's RFC and hypothetical to the vocational expert failed to include all of Tyler's credibly established limitations

Plaintiff contends that the ALJ's RFC and hypothetical to the vocational expert failed to

include all medically established limitations. (D.I. 25 at 12) The Commissioner responds that

the ALJ's RFC was complete and that the ALJ communicated all of Plaintiff's functional

limitations to the vocational expert. (D.I. 29 at 14)

First, Plaintiff cites a conflict between the ALJ's favorable citation to the state agency

physician's RFC assessment and the ALJ's omission from the ALJ's own assessment of RFC of

some of the alleged limitations identified by the state agency physician. (D.I. 25 at 12-13)

However, the Court finds no error in the ALJ's decision to rely on some of the state agency

physician's findings while making his own ultimate RFC finding. The ALJ has the authority to

make the ultimate RFC determination and evaluate all evidence before making a disability

determination. *See* 20 C.F.R. § 404.1546(c) (reserving RFC assessments to ALJ); 20 C.F.R.

§ 404.1527(c)(2) (stating ALJ weighs all relevant medical evidence to make disability

determination). The ALJ reviewed all medical evidence and Plaintiff's own testimony regarding

her physical limitations in formulating Plaintiff's RFC. (*See* Tr. at 14-15) Accordingly, there

was no error in the ALJ's decision not to wholly adopt the state agency physician's RFC.

Second, Plaintiff argues that the ALJ failed to address the effects of Plaintiff's obesity in

his RFC and in the hypothetical question posed to the vocational expert. (D.I. 25 at 13)

However, the record does not reflect any medical finding of obesity; indeed, there is no mention

of obesity in the record. Because Plaintiff's claim that she is obese was not raised before the ALJ

and is not medically established by the record, the ALJ was not required to consider it or include

it in his hypothetical question. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005)

(noting that only those impairments and limitations "medically established" by record need to be

included in ALJ's hypothetical).

Third, Plaintiff argues that the ALJ failed to consider how Plaintiff's drowsiness from

taking the medication Percocet impacted her ability to concentrate and/or sustain work. (D.I. 25

at 14) The Third Circuit has stated, "[d]rowsiness often accompanies the taking of medication,

and it should not be viewed as disabling unless the record references serious functional

limitations." *Burns v. Barnhart*, 312 F.3d 113, 131 (3d Cir. 2002). Here, the record does not

demonstrate that Plaintiff's drowsiness caused any serious functional limitations. The ALJ

acknowledged that Plaintiff experienced drowsiness from taking her medications and included

this information in the hypothetical question posited to the vocational expert. (Tr. at 35)

However, the ALJ and the vocational expert determined that Plaintiff was capable of performing

various jobs despite the drowsiness she experiences. There is nothing in the record that merits a

contrary finding.

Fourth, Plaintiff contends that the ALJ failed to consider and include the limitations

found in Dr. King's medical source statement. (D.I. 25 at 14) However, the record indicates that

the ALJ did consider Dr. King's medical source statement. (*See* Tr. at 15) Specifically, the ALJ

determined that Dr. King's opinion deserved less than controlling weight because it contradicted

21

Dr. King's own findings that Plaintiff did not exhibit any neurological deficits and had relatively intact ranges of motion. (*Id.*) It was not error for the ALJ to reject Dr. King's opinion based on the ALJ's determination that it was unsupported by the objective medical evidence in the record. *See* 20 C.F.R. § 404.1527(d)(2) (indicating that controlling weight must be given to treating source opinions that are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record").

In sum, the ALJ reasonably assessed Plaintiff's RFC and posed a hypothetical question that included all of Plaintiff's credibly established limitations.

### 6. The ALJ's assessment of the medical opinion evidence

Finally, Plaintiff contends that the ALJ erred in failing to weigh the medical opinions in the record. (D.I. 25 at 15) In response, Defendant argues that the ALJ reasonably weighed the medical opinion evidence. (D.I. 29 at 16)

Plaintiff re-asserts her argument that the ALJ did not adequately explain his rationale for refusing to give Dr. King's assessment controlling weight. (D.I. 25 at 16-18) However, as the Court explained above, the ALJ adequately explained his rationale for his decision to reject Dr. King's opinion that Plaintiff was disabled. (Tr. at 15) Hence, the Court concludes that the ALJ adequately explained the amount of weight he gave to the medical evidence and his basis for doing so.

## IV.  CONCLUSION

For the foregoing reasons, the Court will deny Plaintiff's motion for summary judgment and grant Defendant's motion for summary judgment. An appropriate Order follows.

22